**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Jessica MADDOX-NICHOLS<br>9004 Ballard Lane<br>Clinton, MD 20735<br><br>Plaintiff<br><br>v.<br><br>SOUTHERN MARYLAND HOSPITAL, INC<br>c/o Richard McAlee, Resident Agent<br>7503 Surratts Road<br>Clinton, MD 20735<br><br>and<br><br>Charles STEWART<br>c/o Southern Maryland Hospital, Inc.<br>7503 Surratts Road<br>Clinton, MD 20735<br><br>and<br><br>Crystal HARCUM<br>c/o Southern Maryland Hospital, Inc.<br>7503 Surratts Road<br>Clinton, MD 20735<br><br>Defendants | CIVIL ACTION<br><br>CASE NUMBER: ___________________ |

**COMPLAINT**

COMES NOW before this Honorable Court Plaintiff Mrs. Jessica MADDOX-NICHOLS ("Plaintiff" or "Mrs. Maddox-Nichols") and sues Defendants SOUTHERN MARYLAND HOSPITAL, INC., Charles STEWART and Crystal HARCUM.

**AVERMENT OF JURISDICTION**

1. Plaintiff's claims arise in part out of federal questions; accordingly this Complaint falls under this Court's jurisdiction under 28 USC §1331 and 42 USC 2000e-5.

2. Plaintiff's claims under the law of the State of Maryland rely on substantially similar facts as do the federal claims aforementioned, and accordingly fall under the jurisdiction of this Court pursuant to 28 USC §1337.

3. Plaintiff's requested equitable relief falls under this Court's jurisdiction pursuant to 42 USC §2000e-5.

4. Plaintiff's request for costs and attorney's fees lie within this Court's jurisdiction to grant pursuant to 42 USC §2000e-5(k) and Fed. R. Civ. P. 54.

5. All events described hereunder occurred within this judicial District and venue accordingly lies in this Court pursuant to 42 USC §2000e-5(f) and 28 USC §1391.

**PARTIES**

6. Plaintiff Jessica Maddox-Nichols is an adult resident of Prince George's County, Maryland, who, during times relevant, worked for Defendant Southern Maryland Hospital, Inc. as an employee in the payroll department, and before that position worked in other departments of that Defendant's main hospital campus.

7. Defendant Southern Maryland Hospital, Inc. (hereinafter "SMH"), is a Maryland stock corporation engaged primarily in the business of hospital care and related services. Its primary place of business is in southern Prince George's County, Maryland at 7503

Surratts Road, Clinton, Prince George's County, Maryland (hereinafter "the main campus".) Upon information and belief, the hospital chain trading as "MedStar" has recently required an equity interest or other affiliation with SMH, and accordingly SMH may now be trading or doing some business activities under the name "MedStar" or under similar trade names.

8. Defendant Charles Stewart, also known as "Chuck Stewart" ("hereinafter "Stewart"), was at times relevant an adult employee of SMH holding the title of vice president and who maintained supervisory and disciplinary authority over Mrs. Maddox-Nichols at the main campus. Upon information and belief, Stewart is a resident of Prince George's County, Maryland, but it is possible that Mr. Stewart resides outside of that county or, conceivably, outside the State of Maryland.

9. Defendant Crystal Harcum (hereinafter "Harcum") was during times relevant an adult employee at the SMH main campus contemporaneously with Mrs. Maddox-Nichols. Upon information and belief Ms. Harcum resided and resides now within the confines of Prince George's County, Maryland, but it is possible that Harcum resides outside of that county or, conceivably, outside the State of Maryland.

10. In addition to the defendants above named, Angela Beverly (hereinafter "Beverly") was during times relevant an adult employee at the SMH main campus contemporaneously with Mrs. Maddox-Nichols in a supervisory role over Mrs. Maddox-Nichols. Plaintiff does not at this time name Beverly as a defendant in this case but reserves the right to do so to the extent permitted by law, rule and Order of this Court.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TIMELY FILING**

11. In response to racial discrimination at SMH, Mrs. Maddox-Nichols filed an EEOC complaint on or about January 8, 2012. Mrs. Maddox-Nichols amended her complaint to include sexual harassment and retaliation claims shortly thereafter.

12. After a minimal review, the EEOC failed to move forward for approximately 20 months on any meaningful investigation of the case. Accordingly Mrs. Maddox-Nichols requested a Right to Sue letter through counsel in September 2013.

13. The EEOC issued a Right to Sue letter on October 30, 2013, less than 90 days before the date of filing of this lawsuit (please see attached Exhibit A.)

**FACTS COMMON TO ALL COUNTS**

14. Mrs. Maddox-Nichols commenced employment at SMH in July 2007 as an administrative assistant to SMH's Director of Quality and Accreditation, Ms. Kate Malone. She remained an SMH employee in that capacity until June 2011, when she transferred successfully to SMH's Payroll Department, a position consistent with her educational background and training in accounting that involved handling both employee payroll and vendor accounts payable.

15. Mrs. Maddox-Nichols achieved significant positive results for SMH in her initial months in SMH Payroll, including the organization of vendor payments to a monthly savings to SMH of almost $8,000.00 per month in finance charges for one key vendor and the

processing of between 150 and 200 SMH vendor invoices per day. Her final rate of pay was $17.83/hour.

**<u>FACTS RELEVANT TO RACE-BASED DISCRIMINATION</u>**

16. Shortly after transferring to SMH Payroll, Mrs. Maddox-Nichols began experiencing verbal abuse from Defendant Harcum, who also worked with employee payroll and vendor accounts payable and who directed verbal insults at Mrs. Maddox-Nichols in front of other employees.

17. Mrs. Maddox-Nichols sought a resolution to Harcum's abuse conduct through her direct supervisor Allen Burton ("Burton"), who

    a. rebuffed Mrs. Maddox-Nichols' requests,
    b. accused Mrs. Maddox-Nichols of "tattletaling" on Harcum.
    c. told Mrs. Maddox-Nichols that he "didn't want to hear it any more"
    d. stated that if Harcum and Mrs. Maddox-Nichols could not get along, one of the two would have to leave SMH.

18. In November 2011, Harcum confronted Mrs. Maddox-Nichols in the women's rest room, approached her menacingly and in close proximity to Mrs. Maddox-Nichols' face and body and demanded that Mrs. Maddox-Nichols cease her communications with Burton regarding Harcum's abusive behavior. Mrs. Maddox-Nichols responded by proposing to take the entire matter immediately to Burton, which she did. Burton responded to Mrs. Maddox-Nichols request by accusing her, and not Harcum, of refusing to follow proper

channels. Harcum, observing Burton's rebuff of Mrs. Maddox-Nichols' complaints, erupted in laughter.

19. Mrs. Maddox-Nichols then took her concerns to Defendant Stewart, who held supervisory authority over both Burton and Harcum. Stewart advised Mrs. Maddox-Nichols to attempt to bear up under the treatment from Harcum and to attempt to ignore it.

20. In the fall of 2011, Harcum, who is African-American, specifically mocked Ms. Maddox-Nichols, who is white/European-American, for her racial identity and appearance. Harcum confronted Mrs. Maddox-Nichols in a filing room and, mockingly, quoted a movie line "B-O-O H-O-O" from the film "The Breakfast Club" to Mrs. Maddox-Nichols in reference to Mrs. Maddox-Nichols' bullying complaints. When Mrs. Maddox-Nichols expressed confusion at Harcum's comments and reference, Harcum mocked Mrs. Maddox-Nichols for being a white person who did not know by heart a movie that Harcum, apparently, believed all white Americans had seen.

21. Harcum, Defendant Beverly and Defendant Stewart all contributed content to Mrs. Maddox-Nichols probationary review in November 2011, which contained both praise and, particularly from Harcum, criticism. Mrs. Maddox-Nichols rejected some of the factual statements and conclusions contained in that review and refused to sign it.

22. Harcum's hostility to Mrs. Maddox-Nichols continued during 2011 and Mrs. Maddox-Nichols, desiring to keep her job and her children in private school, bore up with it until January 5, 2012. Mrs. Maddox-Nichols did have on November 21 or 22, 2011 one

conversation with Stewart regarding Harcum's conduct, a conversation that ended extremely badly as discussed later in this Complaint.

23. On one occasion in December 2011, Mrs. Maddox-Nichols made a report to Paul Zeller ("Zeller"), SMH HR vice-president, regarding Harcum's continuing harassment and abuse. On that occasion, Mrs. Maddox-Nichols expressed to Zeller her fear of retaliation by Harcum or Burton for reporting Harcum's behavior; Zeller nodded his head in agreement with this assessment and offered to mediate any future difficulties.

24. In the morning of January 5, 2012, Harcum mockingly asked Mrs. Maddox-Nichols whether Harcum should take a white spoon or a black spoon from the office kitchen. Maddox-Nichols responded that a spoon was a spoon.

25. In the early afternoon of January 5, 2012, Harcum stated to Mrs. Maddox-Nichols explicitly and in front of Kamau Harris ("Harris"), an African-American coworker the following: "I [Harcum] have recently decided that I am racist against white women." Harcum repeated this declaration of racism multiple times in explicit language, prompting Harris to plead with Harcum to "stop, seriously just stop, just stop saying that." Harcum responded to Harris's pleas by stating, "no, I am racist against white women", by stating that she had decided she was "racist" in the previous month of December 2011, staring directly at Mrs. Maddox-Nichols and by telling Mrs. Maddox-Nichols "now you can take that to Chuck [Defendant Stewart.]"

26. Mrs. Maddox-Nichols responded to Harcum's declaration of racial and gender animus by suggesting that Harcum's animus must derive her childhood, prompting tears from

Harcum, and by telling Harcum that discriminating against her (Mrs. Maddox-Nichols) was both morally wrong and illegal.

27. At approximately 2 PM on January 5, 2012, Mrs. Maddox-Nichols went to Stewart's office to report Harcum's race-based abuse of her. Stewart stated that he needed to discuss the issue with Burton, and that if Burton didn't handle the matter Stewart would do so.

28. Burton interviewed Mrs. Maddox-Nichols in the presence Harcum later on January 5, 2012, and Ms. Maddox-Nichols reported the events to Burton as they transpired, telling him that what Harcum said was wrong and that Burton needed to handle this. Burton stated to Mrs. Maddox-Nichols, "you're right, you are absolutely right, Jessica." After leaving the interview with Burton, Mrs. Maddox-Nichols reported back to Stewart, who stated, "Jessica, you are right, Crystal was out of line and we will handle it."

29. On the next day, January 6, 2012, Angela Beverly confronted Mrs. Maddox-Nichols about her reporting of Harcum's to Stewart and Burton behavior the previous day, and told Mrs. Maddox-Nichols, "you [Mrs. Maddox-Nichols] bring it [Harcum's racist animus] on yourself."

30. Later that day, Mrs. Maddox-Nichols contacted SMH human resources director Zeller to make a formal report. Zeller directed Mrs. Maddox-Nichols to prepare a brief written report of Harcum's conduct, which she prepared and returned to Zeller. Zeller requested that Mrs. Maddox-Nichols contact Burton to have him contact Zeller, which she did; Burton then requested a copy of her report to Zeller, which Mrs. Maddox-Nichols provided him.

31. As a result of the stress of Harcum's abusive conduct and the multiple reports to multiple SMH officials, Mrs. Maddox-Nichols reported to SMH Employee Health in a state of substantial emotional distress and physical distress due to a migraine headache. An Employee Health representative of SMH assessed Mrs. Maddox Nichols and sent her home for the rest of the business day on January 6, 2012, due to the stress from the harassment. Mrs. Maddox-Nichols took several personal days during the following week for personal recuperation from the stress and for medical attention.

32. Perceiving no other route for the resolution of her grievances, Ms. Maddox-Nichols filed a racial discrimination complaint with the EEOC Baltimore Office on or about January 8, 2012. Mrs. Maddox-Nichols modified that complaint with a supplement in February 2012, to include sexual harassment and retaliation charges, after SMH fired her.

33. Before filing the EEOC complaint, Mrs. Maddox-Nichols notified both Angela Beverly and Stewart of her intention to file the complaint and on January 12, 2012 Mrs. Maddox-Nichols informed Stewart and Beverly of the *fait accompli* of her filing the previous day.

34. Upon learning that Mrs. Maddox-Nichols had filed an EEOC Complaint, Stewart indicated to Mrs. Maddox-Nichols that:

   a. the hospital (SMH) had done nothing wrong or illegal, and
   b. he (Stewart) would have to take any necessary steps to protect and defend the hospital from any accusation by Mrs. Maddox-Nichols.

35. On the morning of January 13, 2012, Mrs. Maddox-Nichols collected certain emails that she had received from social colleagues and supervisors at SMH. These emails

contained, among other topics and content, written praise for her work, materials for job references and material of a personal nature from friends.

36. On the afternoon of January 13, 2012, SMH fired Mrs. Maddox-Nichols under the pretext of alleged violations of hospital confidentiality policies relating to her collection and forwarding of the aforementioned emails.

37. As a result of the discriminatory abuse at SMH, Ms. Maddox-Nichols suffered stress, embarrassment, anxiety, humiliation and outrage.

38. As a result of the retaliatory firing for her opposition to unlawful employment practices, Mrs. Maddox-Nichols suffered lost wages and related access to benefits for herself and her children and the opportunity for continued future compensation and professional opportunities at SMH.

39. Harcum, Stewart and SMH acted with ***malice***, i.e. evil intent, intent to injure or intent to oppress Mrs. Maddox-Nichols.

## **FACTS RELATED TO SEXUAL HARASSMENT AND BATTERY**

40. Paragraphs 14 through 39 are hereby incorporated by reference as if fully restated.

41. On several occasions during her employment, Mrs. Maddox-Nichols' ultimate supervisor and SMH vice president Charles "Chuck" Stewart ("Stewart") made offensive bodily contact with the person of Mrs. Maddox-Nichols, some of which was explicitly sexually offensive and some of which was more generally offensive.

42. Mrs. Maddox-Nichols is and was at all times relevant a married, religiously observant Roman Catholic mother of two children, and at no time requested or agreed that Stewart or any male employed by SMH touch, fondle, strike or grope her derriere or shoulder, hug her, kiss her, stroke or otherwise make contact with her hair or place his hand upon her knee.

43. Stewart on multiple occasions during her employ in SMH's payroll department struck Mrs. Maddox-Nichols in the shoulder or upon her derriere during office interactions in SMH payroll department, to Mrs. Maddox-Nichols mild pain, discomfort and/or confusion. Mrs. Maddox-Nichols inquired of Beverly after one such incident as to whether Beverly had experienced similar physical misconduct from Stewart.

44. On multiple occasions during lunch hours or at other times, Stewart made unwelcome intimate comments to Ms. Maddox-Nichols regarding her lengthy blond hair, her physical figure and her (alleged) ability to eat and not gain weight. At no time did Mrs. Maddox-Nichols invite or request this sexual attention from the SMH vice-president Stewart.

45. Stewart embarrassed Mrs. Maddox-Nichols by telling her that she was so beautiful that it must be difficult for her, and in so doing proved his thesis by making her work environment difficult, awkward and embarrassing for her.

46. On November 21 or 22, 2011, the date of Mrs. Maddox-Nichols' belated 90-day review, Stewart entered Mrs. Maddox-Nichols' office to discuss her review that took place earlier and to discuss the difficulties that she had been having with Harcum aforementioned. During that conversation, Stewart placed his hand upon Mrs. Maddox-Nichols' knee,

kept it there to Mrs. Maddox-Nichols' acute embarrassment and shock, and began to rub her knee. At no time did Mrs. Maddox-Nichols invite or request physical contact from Stewart.

47. When the conversation was ended, Mrs. Maddox-Nichols requested personal leave for the rest of the day. When she stood up from her desk, the taller and heavier Stewart grabbed Mrs. Maddox-Nichols, hugged her in a full embrace, trapped her arms under his and pressed her chest and breast against his chest and abdomen.

48. While trapping her, Stewart kissed her forehead and brushed his hands along her hair down to her waist, telling her how beautiful her hair was and how she (Maddox-Nichols) had to prove herself innocent of charges that Harcum had made against her. When Stewart finally ceased his contact with Mrs. Maddox-Nichols, she grabbed her purse, ran out of the office and departed for home in an extremely upset state.

49. As a result of Mr. Stewart's physical sexual harassment of her person, Mrs. Maddox-Nichols experienced fear, shock, embarrassment, shame, disgust, humiliation and outrage.

50. Mrs. Maddox-Nichols did report the incident to Angela Beverly upon returning to work after the Thanksgiving holiday, who took no known action.

51. Less than 60 days after his unsuccessful sexual advance upon Mrs. Maddox-Nichols, Stewart participated in the decision to fire her on January 13, 2011 for alleged confidentiality violations.

52. As a result of the firing, Mrs. Maddox-Nichols suffered lost wages, the loss of benefits for herself and her children and the opportunity for continued future compensation and

professional opportunities at SMH as well as compounded humiliation, despair, anxiety and moral outrage.

53. Stewart acted out of evil motive, intent to oppress or intent to exploit his married subordinate employee, i.e. with ***malice*** as that term is contemplated under Maryland law and under federal law.

## COUNT I – INTERFERENCE WITH CONTRACTUAL RIGHTS ON THE BASIS OF RACE 42 U.S.C. §1981 Defendants SMH and Harcum

54. Paragraphs 1 through 53 are hereby incorporated by reference as if fully restated.

55. Mrs. Maddox-Nichols had an at-will contractual relationship of employment with Defendant SMH as its hourly employee.

56. Harcum interfered with Mrs. Maddox-Nichols's enjoyment of the benefit of her employment bargain through repeated and persistent harassment in the workplace.

57. Harcum's harassment of Mrs. Maddox-Nichols was explicitly on the basis of Mrs. Maddox-Nichols's race, to wit white/European-American.

58. Harcum's conduct occurred as an agent of SMH while she was employed and on duty at SMH.

59. SMH acquiesced in and endorsed this racial harassment of Mrs. Maddox-Nichols through its agents'

a. harassment of Mrs. Maddox-Nichols,

b. refusal to stop the harassment upon request by Maddox-Nichols,

c. threats to terminate Maddox-Nichols' employment due to her complaints against unlawful racial harassment, and

d. termination of Maddox-Nichols's employment in apparent retaliation for her opposition to racial harassment.

60. As a direct result of race-based harassment by Harcum and SMH within her contract of employment, Mrs. Maddox-Nichols has suffered financial losses both direct and indirect, Mrs. Maddox-Nichols suffered loss of employment wages and access to benefits, loss of future employment opportunities, shock, humiliation, anxiety, and outrage, in defiance of section 1981 of Title 42 of the United States Code.

61. For the foregoing injuries to her contractual rights and benefits, Mrs. Maddox-Nichols requests against Defendants SMH and Harcum:

a. Back pay in the current amount of $60,000.

b. Compensatory damages in the amount of $500,000.00

c. Punitive damages in the amount of $750,000.00

d. Equitable relief in the form of reinstatement to her prior position or, in the alternative, front pay in lieu of reinstatement in the amount of $100,000.00;

e. Costs and attorney's fees pursuant to law and rule; and

f. Such other relief as justice may demand.

**COUNT II – DISCRIMINATION IN EMPLOYMENT ON THE BASIS OF RACE**
**42 U.S.C. § 2000e-2**
**Defendant SMH**

62. Paragraphs 1 through 61are hereby incorporated by reference as if fully restated.

63. SMH discriminated against Mrs. Maddox-Nichols in her employment at SMH on the basis of her race by, through its agents:

a. Harassing her on the basis of her race;

b. Refusing to stop the race-based harassment upon her request;

c. Threatening to terminate her employment if she refused to bear unlawful racial harassment without objection to management; and

d. Terminating her employment due to her objections to race-based harassment

64. As a direct result of race-based harassment by Harcum and SMH within her contract of employment, Mrs. Maddox-Nichols has suffered financial losses both direct and indirect, loss of future employment opportunities, shock, humiliation, anxiety, and outrage, in defiance of Title VII of the 1964 Civil Rights Act, as amended.

65. For the foregoing injuries to her contractual rights and benefits, Mrs. Maddox-Nichols requests against Defendant SMH:

a. Back pay in the current amount of $60,000.

b. Compensatory damages in the amount of $300,000.00

c. Punitive damages in the amount of $300,000.00

d. Equitable relief in the form of reinstatement to her prior position or, in the alternative, front pay in lieu of reinstatement in the amount of $100,000.00.

e. Costs and attorney's fees pursuant to law and rule; and

f. Such other relief as justice may demand.

**COUNT III – RETALIATION FOR OPPOSITION TO UNLAWFUL EMPLOYMENT PRACTICE**
**42 U.S.C. § 2000e-3**
**Defendant SMH**

66. Paragraphs 1 through 59 are hereby incorporated by reference as if fully restated.

67. Mrs. Maddox-Nichols opposed Defendant Harcum's unlawful workplace race-based harassment at SMH by requesting repeatedly that SMH management intervene to make the unlawful harassment stop, by warning SMH of her intentions to seek remedies under applicable law and by alerting SMH that she had in fact filed with the EEOC.

68. Harcum's conduct aforementioned constituted an unlawful employment practice by SMH.

69. In response to Mrs. Maddox-Nichols' opposition to Harcum's unlawful racial harassment, SMH threatened her employment, refused to her further complaints from her regarding this conduct and ultimately fired her.

70. As a result of the retaliation SMH for her opposition to its unlawful practices, Mrs. Maddox-Nichols has suffered financial losses both direct and indirect, loss of future employment opportunities, shock, humiliation, anxiety, and outrage, in defiance of the anti-retaliation provisions of Title VII of the 1964 Civil Rights Act, as amended.

71. For the foregoing injuries to her contractual rights and benefits, Mrs. Maddox-Nichols requests from Defendant SMH:

   a. Back pay in the current amount of $60,000.
   b. Compensatory damages in the amount of $300,000.00
   c. Punitive damages in the amount of $300,000.00

d. Equitable relief in the form of reinstatement to her prior position or, in the alternative, front pay in lieu of reinstatement in the amount of $100,000.00;
e. Costs and attorney's fees pursuant to law and rule; and
f. Such other relief as justice may demand.

**COUNT IV – BATTERY**
**Common Law of Maryland**
**Defendant Stewart and SMH**

72. Paragraphs 1 through ___ are hereby incorporated by reference as if fully restated.

73. Stewart made extremely offensive and unwelcome physical contact upon the person of Mrs. Maddox-Nichols through his invasion of her person.

74. Stewart acted in his within the scope of his role as agent and servant of SMH during working hours when he made contact with the person of Mrs. Maddox-Nichols.

75. As a result of Stewart's offensive conduct, Mrs. Maddox-Nichols suffered fear, anxiety, humiliation, outrage and the indignity of the violation of her personal intimacy.

76. For the foregoing injuries, Mrs. Maddox-Nichols requests from Defendants SMH and Stewart:

a. compensatory damages in the amount of $400,000.00 and
b. punitive damages in the amount of $400,000.00;
c. costs and attorney's fees pursuant to law and rule; and
d. such other relief as justice may demand.

**COUNT V – FALSE IMPRISONMENT**
**Common Law of Maryland**
**Defendant Stewart and SMH**

77. Paragraphs 1 through 76 are hereby incorporated by reference as if fully restated.

78. Stewart detained Mrs. Maddox-Nichols during his battery upon her by confining her physically, trapping her arms beneath his and impeding her movement.

79. Stewart's confinement of Mrs. Maddox-Nichols was unlawful.

80. Stewart's confinement of Mrs. Maddox-Nichols was without her consent.

81. As a result of Stewart's detention, Mrs. Maddox-Nichols suffered fear, anxiety, humiliation, outrage and the indignity of the violation of her personal intimacy and freedom of movement as a free citizen and adult.

82. For the foregoing injuries, Mrs. Maddox-Nichols requests from Defendants SMH and Stewart:

   a. compensatory damages in the amount of $400,000.00;
   b. punitive damages in the amount of $400,000.00;
   c. costs and attorney's fees pursuant to law and rule; and
   d. such other relief as justice may demand.

**COUNT VI – DISCRIMINATION ON THE BASIS OF SEX**
**HOSTILE WORK ENVIRONMENT**
**42 USC §2000e-2 et seq. and 29 C.F.R. 1604-11(a)(3)**
**Defendants Stewart and SMH**

83. Paragraphs 1 through 82 are hereby incorporated by reference as if fully restated.

84. SMH and Stewart subjected Mrs. Maddox-Nichols to negatively disparate treatment on the basis of her sex in the conditions of her employment through a pervasive sexually hostile work environment through unwanted sexual comments, invasion of her personal space, sexual battery and false imprisonment by Charles Stewart on the job.

85. SMH additionally subjected Mrs. Maddox-Nichols to a hostile work environment by refusing to stop the sexist abuse of her by Harcum in her statement of racial hostility against "white women."

86. Through their subjection of Mrs. Maddox-Nichols to this hostile work environment, SMH and Stewart discriminated against Mrs. Maddox-Nichols in the conditions of her employment on the basis of her sex in defiance of the mandate of the United States Congress under Title VII of the 1964 Civil Rights Act.

87. In compensation for the discrimination against her by Stewart and SMH, Mrs. Maddox-Nichols respectfully requests from Defendants SMH and Stewart:

a. Back pay in the current amount of $60,000.
b. Compensatory damages in the amount of $300,000.00
c. Punitive damages in the amount of $300,000.00
d. Equitable relief in the form of reinstatement to her prior position or, in the alternative, front pay in lieu of reinstatement in the amount of $100,000.00;
e. Costs and attorney's fees pursuant to law and rule; and
f. Such other relief as justice may demand.

**COUNT VI – DISCRIMINATION ON THE BASIS OF SEX**
**QUID PRO QUO SEXUAL HARASSMENT**
**42 USC §2000e-2 et seq. and 29 C.F.R. 1604-11(a)(1) and (2)**
**Defendants Stewart and SMH**

88. Paragraphs 1 through 86 are hereby incorporated by reference as if fully restated.

89. SMH and Stewart subjected Mrs. Maddox-Nichols to negatively disparate treatment on the basis of her sex by making her acquiescence to unwanted sexual attention, including sexual battery at the date of her review, from Charles Stewart a condition of her continued employment at SMH.

90. SMH and Stewart, a vice-president at SMH, fired Mrs. Maddox-Nichols after her refusal to acquiesce to Stewart's sexual harassment and aggression and in response to that refusal.

91. Through their subjection of Mrs. Maddox-Nichols to this quid pro quo harassment, SMH and Stewart discriminated against Mrs. Maddox-Nichols in the conditions of her employment on the basis of her sex in defiance of the mandate of the United States Congress under Title VII of the 1964 Civil Rights Act.

92. In compensation for the discrimination against her by Stewart and SMH, Mrs. Maddox-Nichols respectfully requests from Defendants SMH and Stewart:

a. Back pay in the current amount of $60,000.
b. Compensatory damages in the amount of $300,000.00
c. Punitive damages in the amount of $300,000.00
d. Equitable relief in the form of reinstatement to her prior position or, in the alternative, front pay in lieu of reinstatement in the amount of $100,000.00;

e. Costs and attorney’s fees pursuant to law and rule; and

f. Such other relief as justice may demand.

**<u>COUNT VII – RETALIATION FOR OPPOSITION TO UNLAWFUL EMPLOYMENT PRACTICE</u>**
**<u>42 USC §2000e-3</u>**
**<u>Defendant SMH</u>**

93. Paragraphs 1 through ___ are hereby incorporated by reference as if fully restated.

94. Mrs. Maddox-Nichols opposed the unlawful employment practice of sexual harassment at the hands of SMH vice-president Charles Stewart by refusing to acquiesce in it and by raising it as an issue to her immediate supervisor Angela Beverly.

95. In retaliation against this refusal, Stewart failed or refused to intervene within the scope of his employment duties to alleviate harassment from Mrs. Maddox-Nichols' coworker Defendant Crystal Harcum.

96. Stewart's actions were actions of SMH as its vice-president.

97. SMH, through the actions of Charles Stewart, fired Mrs. Maddox-Nichols in retaliation for he refusal to acquiesce in unwelcome sexual contact and sexual battery by Stewart.

98. Through its retaliatory firing of Mrs. Maddox-Nichols, SMH defied the will and express mandate of the United States Congress under Title VII of the 1964 Civil Rights Act codified at 42 U.S.C. 2001e-3 (retaliation for opposing unlawful employment practice.)

99. In compensation for the retaliation against her by Stewart and SMH, Mrs. Maddox-Nichols respectfully demands against Defendant SMH:

   a. Back pay in the current amount of $60,000;

   b. Compensatory damages in the amount of $300,000.00;

   c. Punitive damages in the amount of $300,000.00;

d. Equitable relief in the form of reinstatement to her prior position or, in the alternative, front pay in lieu of reinstatement in the amount of $100,000.00;
e. Costs and attorney's fees pursuant to law and rule; and
f. Such other relief as justice may demand.

**COUNT VIII –WRONGFUL TERMINATION**
**Common Law of Maryland**
**Defendant SMH**

100. Paragraphs 1 through ___ are hereby incorporated by reference as if fully restated.

101. The General Assembly of Maryland has established as an explicit public policy that discrimination in employment by any person on the basis of race or sex is to be prohibited. Md. Code Ann. SG § 20-602.

102. Mrs. Maddox-Nichols opposed the unlawful practices of sexual discrimination and racial discrimination at SMH in the form of workplace harassment by:

a. Refusing to acquiesce in sexual harassment at SMH;
b. Refusing to acquiesce in racial harassment at SMH;
c. Reporting sexual harassment to her immediate supervisor at SMH;
d. Reporting racial harassment to her immediate supervisor, to human resources and to Defendant and SMH vice-president Charles Stewart;
e. By filing a complaint with the EEOC regarding racial harassment after she had exhausted reasonable means within SMH without success; and

f. By alerting her supervisors Angela Beverly and Defendant Stewart of her intention to file an EEOC complaint and thereafter of the fact that she had filed that EEOC complaint.

103. SMH fired Mrs. Maddox-Nichols in retaliation for her complaints of unlawful harassment and in defiance of the will and bluntly expressed public policy of the Maryland General Assembly.

104. SMH discharged Mrs. Maddox-Nichols abusively in defiance of Maryland common law.

105. As a result of the unlawful firing, Mrs. Maddox-Nichols suffered lost wages and the opportunity for continued future compensation and professional opportunities at SMH.

106. In compensation for the retaliation against her by Stewart and SMH, Mrs. Maddox-Nichols respectfully demands against Defendant SMH:

a. Back pay in the current amount of $60,000.00.

b. Compensatory damages in the amount of $300,000.00

c. Punitive damages in the amount of $300,000.00

d. Equitable relief in the form of reinstatement to her prior position or, in the alternative, front pay in lieu of reinstatement in the amount of $100,000.00;

e. Costs and attorney's fees pursuant to law and rule; and

f. Such other relief as justice may demand.

Respectfully submitted,

/s/

______________________________

T. Bruce Godfrey #24596
Box 444
Reisterstown, MD 21136
(410) 561-6061
godfrey@brucegodfrey.com
(888) 241-3135 facsimile
Attorney for Jessica Maddox-Nichols

**AFFIDAVIT**

I Jessica Maddox-Nichols do certify under the penalty of perjury that I have read this entire Complaint and that its contents are true to the best of my knowledge, information and belief. I do authorize the filing of this lawsuit.

______________________________
Jessica Maddox-Nichols

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

<table>
<tr>
<td>
Jessica MADDOX-NICHOLS<br>9004 Ballard Lane<br>Clinton, MD 20735<br><br>Plaintiff<br><br>v.<br><br>SOUTHERN MARYLAND HOSPITAL, INC<br>c/o Richard McAlee, Resident Agent<br>7503 Surratts Road<br>Clinton, MD 20735<br><br>and<br><br>Charles STEWART<br>c/o Southern Maryland Hospital, Inc.<br>7503 Surratts Road<br>Clinton, MD 20735<br><br>and<br><br>Crystal HARCUM<br>c/o Southern Maryland Hospital, Inc.<br>7503 Surratts Road<br>Clinton, MD 20735<br><br>Defendants
</td>
<td>
CIVIL ACTION<br><br>CASE NUMBER: ___________________
</td>
</tr>
</table>

**JURY TRIAL DEMAND**

Plaintiff, through counsel undersigned, respectfully demands a jury on all issues triable by a jury.

Respectfully submitted,

/s/

______________________________

T. Bruce Godfrey #24596
Box 444
Reisterstown, MD 21136
(410) 561-6061
godfrey@brucegodfrey.com
(888) 241-3135 facsimile
Attorney for Jessica Maddox-Nichols

EEOC Form 161-B (11/09)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

EXHIBIT A

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Jessica E. Maddox-Nichols**
**9004 Ballard Lane**
**Clinton, MD 20735**

From: **Baltimore Field Office**
**10 South Howard St**
**3rd Floor**
**Baltimore, MD 21201**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **531-2012-00576** | **Christie D. Boyd, Investigator** | **(410) 209-2762** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Rosemarie Rhodes,**
**Director**

OCT 30 2013
*(Date Mailed)*

Enclosures(s)

cc:

**Kraig B. Long, Esuire**
**Shawe Rosenthal, LLP**
**20 S. Charles Street**
**Suite 1102**
**Baltimore, MD 21201**

**Bruce Godfrey, Esquire**
**LAW OFFICE OF BRUCE GODFREY**
**Post Office Box 444**
**Reisterstown, MD 21136**