## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JESSICA MADDOX-NICHOLS,

    Plaintiff,

    v.

SOUTHERN MARYLAND HOSPITAL,
INC., *et al.*,

    Defendants.

Civil Action No. TDC-14-0243

### MEMORANDUM OPINION

This matter is before the Court on a Motion to Dismiss, ECF No. 10, filed by Defendants Southern Maryland Hospital, Inc. ("SMH"), Charles Stewart ("Stewart"), and Crystal Harcum ("Harcum") (collectively, "Defendants"). Defendants raised the following issues in their Motion to Dismiss: (1) whether Plaintiff Jessica Maddox-Nichols ("Maddox-Nichols") failed to exhaust administrative remedies for her claims of hostile work environment (Count VI), sex discrimination (Count VII), and retaliation for opposition to sex discrimination (Count VIII); and (2) whether Maddox-Nichols sufficiently stated a claim for wrongful discharge in Count IX.

On August 11, 2014, Maddox-Nichols filed a stipulated dismissal of Count IX of the Complaint, which the Court approved on August 13, 2014. ECF Nos. 16-17. Therefore, the remaining issues before the Court are whether it must dismiss Counts VI-VIII for failure to exhaust, and if it dismisses Counts VI-VIII, whether the Court should exercise supplemental jurisdiction over Maddox-Nichols's state law claims for battery (Count IV) and false imprisonment (Count V). The Court has reviewed the pleadings and supporting documents and heard oral argument on November 5, 2014. For the following reasons, Defendants' Motion to

Dismiss is GRANTED. The Court also declines to exercise supplemental jurisdiction over Maddox-Nichols's state law claims for battery and false imprisonment. Therefore, Counts IV-VIII of the Complaint are DISMISSED.

## BACKGROUND

Maddox-Nichols is a white woman who began working at SMH in July 2007 as an administrative assistant and served as a payroll assistant from June 2011 until she was discharged on January 13, 2012. Compl. ¶¶ 14, 36, ECF No. 1. Maddox-Nichols alleges that shortly after she transferred to SMH's Payroll Department, Harcum, an African American woman who was her coworker, began engaging in discriminatory behavior toward Maddox-Nichols on the basis of her race and her daughters' disabilities, and that SMH failed to rectify the situation and instead terminated her when she complained of the discrimination. *Id.* ¶¶ 16-39.

Maddox-Nichols further alleges in her Complaint that "[o]n several occasions during her employment," Stewart, who was Maddox-Nichols's male supervisor, engaged in unwelcome sexual harassment and sexually discriminatory behavior toward her. *Id.* ¶¶ 41-45. This activity included an incident on or about November 22, 2011,[1] when Maddox-Nichols met with Stewart for her 90-day performance review. *Id.* ¶ 46. During that encounter, Stewart rubbed Maddox-Nichols's knee, and then, before Maddox-Nichols was able to run out of the office, grabbed her in a full embrace, trapped her arms under his and pressed her against his chest, kissed her forehead, brushed his hands along her hair, and told her how beautiful she was and that she would have to "prove herself innocent of charges that Harcum had made against her" regarding

---

[1] In the Complaint, Maddox-Nichols states that this meeting occurred on November 21 or 22, 2011. Compl. ¶ 46. For the sake of brevity, the Court will refer to this as the November 22, 2011 meeting throughout this Memorandum Opinion.

her work performance. *Id.* ¶¶ 21, 46-48. Maddox-Nichols alleges that less than 60 days after this unsuccessful sexual advance, Stewart participated in the decision to terminate her. *Id.* ¶ 51.

On or about January 8, 2012, Maddox-Nichols filed a complaint with the Baltimore Field Office of the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of race and disability.[2] *Id.* ¶ 32; *see also* Resp. Mot. Dismiss, Ex. A, ECF No. 13-2. On January 13, 2012, SMH fired Maddox-Nichols for alleged violations of the hospital confidentiality policy. Compl. ¶ 36.

On February 24, 2012, Maddox-Nichols sent an email to the EEOC in which she requested that the EEOC add a document to her EEOC file. Resp. Mot. Dismiss, Ex. C, ECF No. 13-2. The attached document was entitled "Amendment to my EEOC Complaint," and contained a description of Stewart's unwelcome physical behavior toward Maddox-Nichols, including an account of the November 22, 2011 encounter between Stewart and Maddox-Nichols. *Id.*

On March 15, 2012, the EEOC sent a completed Charge of Discrimination Form ("the Charge") to Maddox-Nichols to review and sign. *See* Resp. Mot. Dismiss, Ex. D, ECF No. 13-2 (cover letter sent by EEOC along with the Charge form). However, only the boxes for race discrimination, disability discrimination, and retaliation were checked on the Charge, and the narrative portion of the document contained only a description of Maddox-Nichols being "subject to racial harassment by Crystal Harcum," who "constantly berated and ridiculed" Maddox-Nichols by making references to her race and to her two daughters' disabilities. Mot. Dismiss, Ex. 1, at 1, ECF No. 10-2. Importantly, the sex discrimination box on the Charge was not checked, and the document did not otherwise contain any description of Stewart's alleged

---

[2] Maddox-Nichols has not filed any disability discrimination claims in the present civil case, and her race discrimination claims are not at issue on this Motion.

3

sexually discriminatory conduct toward Maddox-Nichols. *Id.* The only mention of Stewart is the following: "I went to Chuck Stewart, Vice President, and Allen Burton, Comptroller, to complain [about Harcum] but no action was taken." *Id.* Despite the fact that the Charge contained no allegations of sex discrimination, Maddox-Nichols reviewed, edited, and signed the Charge on March 18, 2012. *Id.*

After the EEOC provided the Charge to SMH, and SMH submitted a formal position statement addressing the claims, Maddox-Nichols again raised to the EEOC her sex discrimination claims as part of her formal response to the employer's position statement. Resp. Mot. Dismiss, Ex. F at 3, ECF No. 13-2. In submitting this response, Maddox-Nichols's counsel informed the EEOC that he did not object to the EEOC providing "the entirety of this submission" to counsel for SMH. *Id.* at 1. Nevertheless, SMH never received Maddox-Nichols's proposed amendment, her response to the SMH position statement, or any other notice from the EEOC that Maddox-Nichols was asserting sex discrimination charges. Mot. Dismiss at 7. There is no evidence that the EEOC even investigated these claims.

In September 2013, after the requisite 180 days from the date of the Charge, Maddox-Nichols requested a right-to-sue letter, which the EEOC issued on October 30, 2013. Compl., Ex. A, ECF No. 1; Resp. Mot. Dismiss, Ex. H, ECF No. 13-2. On January 27, 2014, Maddox-Nichols filed her Complaint, alleging, on the basis of Harcum's conduct: interference with contractual rights under 42 U.S.C. § 1981 (Count I); race discrimination under Title VII (Count II); and retaliation for her opposition to race discrimination under Title VII (Count III). On the basis of Stewart's conduct, including the alleged unwelcome physical contact during the November 22, 2011 meeting, Maddox-Nichols alleged: battery (Count IV); false imprisonment (Count V); hostile work environment on account of sex under Title VII (Count VI); sex

4

discrimination under Title VII (Count VII); and retaliation for her opposition to sex discrimination under Title VII (Count VIII). As noted above, Maddox-Nichols's claim for wrongful discharge (Count IX) was dismissed by stipulation on August 13, 2014. *See* ECF Nos. 16-17.

On May 9, 2014, Defendants filed the present Motion to Dismiss, arguing that the Court should dismiss Counts VI-VIII for failure to exhaust administrative remedies and that it should also decline to exercise supplemental jurisdiction over Maddox-Nichols's state law claims for battery (Count IV) and false imprisonment (Count V).

## DISCUSSION

### I. Legal Standard

Before filing suit under Title VII, a plaintiff is required to file an administrative charge of discrimination with the EEOC. 42 U.S.C. § 2000e–5(f)(1) (2012). Under the precedent of the United States Court of Appeals for the Fourth Circuit, a failure to exhaust administrative remedies under Title VII should be addressed by way of a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[3] *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009). On a Rule 12(b)(1) motion, the plaintiff bears the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

---

[3] Whether failure to exhaust administrative remedies is always a subject matter jurisdiction question has not been definitively established. The Supreme Court has noted that "[o]n the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous," *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 511 (2006), and has "cautioned . . . against profligate use of the term . . . 'jurisdictional.'" *Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers*, 558 U.S. 67, 82 (2009). Notably, the Fourth Circuit has held that the question of whether an administrative claim was timely filed with the EEOC is *not* jurisdictional. *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002).

## II. Administrative Exhaustion

The "EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). The Charge, which is set forth on EEOC Form 5 "Charge of Discrimination," must contain allegations "sufficiently precise to identify the parties, and to describe generally the actions or practices complained of." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (quoting 29 C.F.R. § 1601.12(b) (2004)). If the claims asserted in a civil action "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Id.* at 509 (internal citation and quotation marks omitted). Although the administrative charges are to be construed liberally, "a plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex." *Id.* at 509. That is precisely the case here. In this instance, the EEOC Charge filed by Maddox-Nichols contained only allegations of race and disability discrimination and made no reference to hostile work environment, sex discrimination, and retaliation for opposition to sex discrimination. Thus, the claims not referenced in the Charge, contained in Counts VI-VIII of the Complaint, would typically be barred.

Maddox-Nichols argues that the Court should nevertheless permit her to pursue these claims in her civil suit because her February 24, 2012 email to the EEOC, which contained an attachment describing Stewart's sexually inappropriate behavior, effectively amended her Charge. In submitting the email, Maddox-Nichols plainly sought to amend her Charge. The email stated, "I have 1 more thing that I would like to add to my EEOC file. Could you please add the attachment." Resp. Mot. Dismiss, Ex. C, at 1. The referenced attachment, which contained her allegations of sexual harassment, sex discrimination, and retaliation by Stewart,

was entitled "Amendment to my EEOC Complaint." *Id.* at 3. Having received that email, the EEOC should have included those allegations in the draft Charge it sent on March 15, 2012 to Maddox-Nichols for review and signature. It did not. As a result of this oversight, the Charge signed and submitted by Maddox-Nichols on March 18, 2012 contains only race and disability discrimination allegations, with no mention of the sex discrimination or related conduct alleged in this civil suit.

It is entirely understandable that a plaintiff in Maddox-Nichols's position, who was *pro se* during the beginning stages of the EEOC investigation,[4] would assume that her submission of a document entitled "Amendment to my EEOC Complaint" would suffice to amend the Charge, and would not appreciate the need to ensure that her sex discrimination allegations were specifically referenced in the Charge form. The Fourth Circuit, however, has adopted a rigid rule that letters, emails, and other submissions cannot be deemed to have effected an amendment of the Charge; only inclusion of additional allegations on the face of the Charge form will count.

The Fourth Circuit addressed this issue under very similar circumstances in *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401 (4th Cir. 2013), where the plaintiff, after having received a prepared EEOC Charge, submitted a letter to the EEOC requesting that her Charge be amended to include allegations of additional claims. *Id.* at 405. Upon receipt of the letter, the EEOC issued an amended Charge that included allegations regarding one additional event, but did not include all of the additional allegations the plaintiff had requested. *Id.* The Fourth Circuit held that the district court was permitted to consider only the allegations in the plaintiff's EEOC Charge and could not construe the plaintiff's letters and intake questionnaire as

---

[4] Maddox-Nichols retained counsel before she reviewed and executed the Charge. Her attorney sent SMH a letter dated February 21, 2012 giving notice of his appearance. *See* Reply, Ex. 1, ECF No. 15-1.

amendments to the formal Charge. *Id.* at 408-09. The court reasoned that reading the plaintiff's letters and questionnaire as part of her formal discrimination Charge would contravene the purposes of Title VII, which included putting the employer on notice and encouraging conciliation. *Id.* at 408. The court also rejected the plaintiff's argument that she should not be penalized because it was the EEOC that had been negligent in not sharing the plaintiff's letters and intake questionnaire with the employer. *Id.* The court reasoned that there was no requirement that the EEOC undertake such an action. *Id.*

The Fourth Circuit has reached the same conclusion on multiple occasions. *See Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005) (holding that a letter referencing a retaliation claim that the plaintiff sent to the EEOC five months after filing her Charge did not cure the plaintiff's failure to allege retaliation in the Charge itself for purposes of administrative exhaustion.); *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) ("Even if [the plaintiff] had subjectively believed she had amended her charge by sending the letter, it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it."). In *Sloop*, the plaintiff had even written in her letter to the EEOC, "I am now aware that I need to add a charge of retaliation to my complaint," but the Fourth Circuit held that without an actual change to the EEOC Charge form, there was no amendment, and therefore the plaintiff was barred from bringing her retaliation claim for failure to exhaust administrative remedies. *Sloop*, 198 F.3d at 149.

In this instance, *Balas*, *Miles*, and *Sloop* are controlling authority. Based on this precedent, Maddox-Nichols's submission of an email and attachment requesting to add claims of

sex discrimination arising from the actions of Stewart was insufficient to effect an amendment of the Charge, such that those claims have not been exhausted administratively. Notably, after she had submitted her email requesting to add claims of sex discrimination, Maddox-Nichols had an opportunity to review the draft Charge and even made various handwritten corrections to the document, but signed it without adding any reference to her sex discrimination allegations. Thus, Maddox-Nichols had as much or more of an opportunity to include her additional allegations in the Charge as the plaintiffs in *Balas*, *Miles*, and *Sloop* did. Although Maddox-Nichols made no effort to hide these allegations from SMH, and her counsel even offered to have the EEOC share with SMH her formal response to the SMH position statement, which contained a description of those allegations, the EEOC never did inform SMH of these charges. Given that one of the rationales for requiring all allegations to appear in the Charge is to ensure that the employer receives notice of all claims, *Balas*, 711 F.3d at 408, there is no basis to depart from established precedent in this case.

The rule that all allegations must appear on the face of the EEOC Form 5 Charge may be overly formulaic, as it is likely unreasonable to expect potential plaintiffs to understand that even submitting a letter entitled "Amendment to my EEOC Complaint" is insufficient to effect an actual amendment. The rigidity of the rule is particularly questionable when, as was the case here, EEOC officials, who should be expected to understand this rule, inexplicably failed to act on such proposed amendments and neither included the proposed amended claims in the Charge sent to Maddox-Nichols to sign, nor otherwise notified SMH of these allegations. Maddox-Nichols's request for some form of equitable relief from this rule is therefore entirely reasonable. Nevertheless, the Court is bound by Fourth Circuit precedent on this issue and finds no means by

which to escape this rule.  Therefore, Counts VI-VIII of the Complaint are dismissed for failure to exhaust administrative remedies.

### III.  Supplemental Jurisdiction

Having dismissed the sex discrimination claims, the Court turns to the question whether it should exercise supplemental jurisdiction over Maddox-Nichols's state law claims for battery and false imprisonment.  Under 28 U.S.C. § 1367, where district courts have original jurisdiction over claims in a civil action, the courts also have supplemental jurisdiction "over all other claims that are so related . . . that they form part of the same case or controversy."  28 U.S.C. § 1367(a) (2012).  The test for determining whether state and federal claims form part of the same "case or controversy" is that the claims must "derive from a common nucleus of operative fact."  *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 662 (4th Cir. 1998) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).  In addition, under § 1367, district courts generally have "discretion to retain *or* dismiss state law claims [even] when the federal basis for an action drops away" and "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims [even] when all federal claims have been extinguished."  *Shanaghan v. Cahill*, 58 F.3d 106, 109-10 (4th Cir. 1994) (emphasis in original).  Supplemental jurisdiction is therefore "a doctrine of discretion" and not a "plaintiff's right."  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

In this case, although federal race discrimination claims remain in this case, the battery and false imprisonment state claims are largely independent from them.  Where state and federal causes of action are "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count," there is no common nucleus of operative fact.  *Hales v. Winn-Dixie Stores, Inc.*, 500 F.2d 836, 847 (4th Cir. 1972).  Such is the

case here. The November 22, 2011 meeting between Maddox-Nichols and Stewart, during which the alleged battery and false imprisonment occurred, related to Maddox-Nichols's performance review and did not include discussion of Harcum's alleged racially discriminatory conduct toward Maddox-Nichols. Hearing on Motion to Dismiss, *Maddox-Nichols v. S. Md. Hosp., Inc.*, No. 14-cv-0243-TDC, at 2:59:33 p.m. (D. Md. November 5, 2014). As counsel for Maddox-Nichols acknowledged during oral argument, to the extent that Harcum was discussed during the meeting, it was solely in reference to Harcum's contributions to Maddox-Nichols's performance review. *Id.* Furthermore, in both her description of the race discrimination case to the EEOC, *see* Resp. Mot. Dismiss, Ex. A, and the Complaint, Maddox-Nichols did not need to describe the events of her November 22, 2011 meeting in order to state her race discrimination claim. Compl. ¶¶ 16-39, 40-53 (describing "Facts Relevant to Race-Based Discrimination," separately from "Facts Related to Sexual Harassment and Battery").

There is a limited connection between the two sets of allegations in that Stewart was a supervisor to whom Maddox-Nichols complained of Harcum's racially discriminatory conduct but who allegedly failed to stop it. Such a link is likely insufficient. In *Rivera v. Ndola Pharmacy Corporation*, 497 F. Supp. 2d 381 (E.D.N.Y. 2007), a case involving a Fair Labor Standards Act ("FLSA") claim, the court exercised supplemental jurisdiction over a state law sexual harassment claim against a supervisor who had adjusted the plaintiff's pay based on her receptivity to his advances because the level of pay was a significant issue for the FLSA claim. *Id.* at 393. The court, however, found no common nucleus of operative fact to justify exercising supplemental jurisdiction over similar state law sexual harassment claims against two other employees, even though those claims were arguably linked to the same supervisor in that he was informed of, but failed to investigate, her complaints against the two additional employees. *Id.* at

11

394-95. Likewise, here, without the sex discrimination claims (Counts VI-VIII) in the case, any relationship between the remaining federal claims and the state claims for battery and false imprisonment appears to be too attenuated to be characterized as deriving from a common nucleus of operative fact.

Absent a common nucleus of operative fact, the Fourth Circuit has instructed district courts deciding whether to exercise jurisdiction over state law claims to consider, among other factors: convenience and fairness to the parties, existence of any underlying issues of federal policy, comity, and considerations of judicial economy. *Shanaghan*, 58 F.3d at 110 (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  The battery and false imprisonment claims do not touch upon any underlying issues of federal policy, as they are strictly state common law claims.  Conversely, they do not implicate a complex issue of state law that would cause a federal court to decline to exercise jurisdiction in the interests of comity. With respect to convenience and judicial economy, Maddox-Nichols does have an interest in consolidating all of her claims to avoid parallel litigation, and overall judicial economy may be served by having only one case.

However, the analysis of convenience and judicial economy should also take into account whether Maddox-Nichols may be able to resurrect her federal sex discrimination before the EEOC, as her counsel has stated that he intends to do.  Hearing at 02:54:05 p.m.  Although the issue of whether Maddox-Nichols may still exhaust administrative remedies for her sex discrimination claims is not before the Court, and the Court will not decide it here, it is notable that Maddox-Nichols clearly presented her sex discrimination allegations to the EEOC in her email and attachment on February 12, 2012 (within the 300 days from the last date of the discrimination, by which an employee must file a charge with the EEOC), that the EEOC

12

apparently failed to investigate these sex discrimination allegations, and that, as discussed in the preceding section, the Charge and the right-to-sue letter (which sets a 90-day time limit for filing a federal lawsuit) did not relate to Maddox-Nichols's sex discrimination claims.  Under these circumstances, it is possible that the EEOC would conclude that Maddox-Nichols's February 12 submission effectively constituted a separate, timely charge that can now be formalized in an EEOC Form 5, investigated, and form the basis for a separate right-to-sue letter. *See Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 404-06 (2008) (holding that documents filed with the EEOC constitute a charge, so long as the filing, as a whole, can be read as a request for the EEOC to act); *Edelman v. Lynchburg College*, 300 F.3d 400, 404-05 (4th Cir. 2002) (holding that for purposes of determining timeliness, an employee's signed and executed EEOC Form 5 related back to the date of an earlier-filed letter, which the court construed as a valid charge); *see also* 29 C.F.R. § 1601.12(b) (2014) (providing that amendments to perfect, verify, or add to a charge relate back to the date the charge first was received).

If Maddox-Nichols is able to revive the federal sexual discrimination claims, as a matter of convenience and judicial economy, the state law battery and false imprisonment claims arising from the same operative facts would be better litigated together with them, rather than addressed in the present, ongoing race discrimination case.  Because this remains a possibility, the Court declines to exercise supplemental jurisdiction over the state common law claims of battery and false imprisonment.  Counts IV-V of the Complaint are therefore dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.   Counts IV-VIII of the Complaint are dismissed.  A separate Order follows.

Date: November 19, 2014

THEODORE D. CHUANG
United States District Judge